IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| JUSTIN PATRICK KELLY, | ) | CASE NO. 06-34075-H3-7 |
| | ) | |
| Debtor, | ) | |
| | ) | |
| | ) | |
| MICHAEL and MARILEE HANSON, | ) | ADVERSARY NO. 07-3001 |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| JUSTIN PATRICK KELLY, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

MEMORANDUM OPINION

The Court held a trial on the Complaint (Docket No. 1) objecting to the dischargeability of debt filed by Michael and Marilee Hanson, Plaintiffs, against Justin Patrick Kelly, Defendant, and after consideration of the pleadings, evidence, testimony and argument of counsel, makes the following findings of fact and conclusions of law and renders a Judgment for Plaintiffs declaring nondischargeable the debt owed by Kelly to Michael and Marilee Hanson. To the extent that any findings of fact are deemed to be conclusions of law they are hereby adopted as such. To the extent that any conclusions of law are deemed to be findings of fact they are hereby adopted as such.

Findings of Fact

1. Plaintiffs seek to have this court determine as nondischargeable a debt owed to Plaintiffs by Defendant as a result of Defendant's breach of a construction contract and for Defendant's fraudulent, willful and intentional injury to Plaintiffs. Plaintiffs also seek recovery of attorney's fees and costs incurred in connection with the filing of the instant adversary proceeding.

2. Plaintiffs allege that the debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(4) based upon fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny, and 11 U.S.C. § 523(a)(6) based on willful and malicious injury by the debtor to another entity or to the property of another entity. The original complaint is based upon section 523(a)(4) and Plaintiffs orally amended their complaint at trial to include section 523(a)(6) as a basis of recovery.

3. Justin Patrick Kelly ("Defendant") filed a voluntary Chapter 7 proceeding on August 22, 2006. Defendant listed Plaintiffs on Schedule F as creditors holding unsecured nonpriority claims. The claim was listed as contingent, unliquidated and disputed, in an unknown amount. On his Statement of Financial Affairs, Defendant also listed a pending state court suit that was filed by Plaintiffs against Defendant, Case No. 843,773, Harris County Civil Court at Law 2, Houston, Texas. Petition, Schedules, and Statement of Financial Affairs, Main Case Number 06-34075-H3-7,

Docket No. 1.

4. At the trial of this matter, both parties presented evidence as to Defendant's liability and the amount of damages sustained by Plaintiffs in connection with the Defendant's breach of the construction contract. Despite the fact that the complaint does not contain a specific request that this debt be liquidated, Plaintiffs, in the prayer of their complaint, requested "other and further relief to which they are justly entitled."  Complaint, Docket No. 1. Pursuant to Bankruptcy Rule 7015(b), the evidence submitted by the parties expanded the pleadings to include the issue of damages.

5. Defendant testified that he owned and operated a business designated as Crystal Pools. On or about November 30, 2004, Defendant, doing business as Crystal Pools, and Plaintiffs entered into a construction contract in connection with building and installing an in-ground swimming pool (with waterfall and cave area), spa, spa therapy chair, firepit, covered patio, and outdoor kitchen, including drainage and irrigation work and the installation of a rock facade on Plaintiffs' home. The agreed upon contract price was $100,000. Contract, Plaintiffs' Exhibit No. 1.

6. Defendant testified that he could not recall what he told Plaintiffs as to how long this job would take. Defendant testified that it takes approximately six weeks to install a standard pool, but that this job would "take some time." Michael Hanson testified that they were told by Defendant that the project

would be a two to three month effort to complete.

      7.  Plaintiff, Michael Hanson, testified that one reason he and his wife, Marilee Hanson, decided to have Defendant do the work was because Defendant seemed serious about directly managing the project, with on-site supervision, until all work by the subcontractors was completed.  The contract price was $100,000.  Plaintiffs obtained funding for the project from Southwest Bank of Texas, which was in the form of four checks[1] made payable to Crystal Pools and Plaintiffs.

      8.  On the date of execution of the contract, November 30, 2004, Plaintiffs paid Defendant a $250 downpayment.  Plaintiffs' Exhibit No.1.  Marilee Hanson testified credibly that she kept a written activity log on the construction project and all entries were made by her and posted contemporaneously as events occurred.  Plaintiffs' Exhibit No. 2.

      9.  On January 20, 2005, Defendant and a helper started the project by outlining the pool on the grass.  On January 21, 2005, excavation work began and Plaintiffs gave Defendant the first check, in the amount of $40,000.  On January 27, 2005, the application of gunite in the pool area was started and the second check, in the amount of $40,000, was given to Defendant.  Plaintiffs' Exhibit No. 2.  The gunite was thought by Plaintiffs to

---

[1] Four checks were issued, all dated January 24, 2005, and made payable to "Crystal Pools and Michael E and Marilee M. Hanson."  There were two checks in the amount of $40,000 each, one in the amount of $15,000, and one in the amount of $4,750.

4

have been completed January 28, 2005.  However, Michael Hanson testified that the gunite work had to be redone as a result of the improper installation of the spa.

      10.   Thereafter, on February 4, 2005, some plumbing work was done.  The next activity was not until February 17 when some equipment was delivered.  During this time period, both Plaintiffs had unsuccessfully attempted to contact Defendant.  On February 19, 2005, Plaintiffs drove to the Crystal Pools office in Clear Lake and were told that Defendant was not there because he was out on the lake with his new boat.  The Plaintiffs were told of the purchase of the boat within approximately three weeks from Defendant's receipt of the second $40,000 check.  Testimony of Michael Hanson; Plaintiffs' Exhibit No. 2.  Defendant testified that he did not remember when he bought the boat.  He testified that the boat was financed, but did not know how much he paid as a downpayment.

      11.   Michael Hanson testified that it was around this time that he and his wife became concerned about Defendant's intention to supervise and complete the project.  Plaintiffs suspected that Defendant was having financial difficulty due to the fact that Defendant would not return their phone calls, no subcontractors were showing up to work, there were long time lapses between dates work was done, and one of the subcontractors insisted upon being paid in advance because of his difficulty collecting from Defendant.  Plaintiffs' Exhibit No. 2.

12. Each Plaintiff made several phone calls to Defendant on February 22, 23, 24, and 25. Messages were left on Defendant's cell phone and at Defendant's office with one of his personnel. Defendant did not return any of the calls. Finally Plaintiffs made contact with Defendant on February 25 and Defendant briefly met with Plaintiffs at their home on February 28. Plaintiffs' Exhibit No. 2.

13. Michael Hanson testified that in March 2005, he and his wife began receiving phone calls from some of the subcontractors (Houston Gunite, Aztecaz Tile & Coping, and NBC Electric) threatening to file a lien and/or advising them that a lien had already been filed on their home. The liens were for work the subcontractors had performed on the project, but for which they had received no payment from Defendant. In connection with NBC Electric, Hanson testified that he faxed them a copy of a Release of Lien that he had which had purportedly been executed by them. NBC Electric advised Hanson that they had not signed the Release.

14. Plaintiffs and Defendant met on March 9, 2005 and set up a tentative schedule for work to be performed by various subcontractors with Defendant to be present to supervise their work. Defendant arrived at Plaintiffs' home on March 12 while some plumbing work was being done. He left a check with Plaintiffs for what he represented was payment in full of one of the subcontractors, Wood Crafters. When Wood Crafters picked up the check sometime on or about the 14th or 15th of March, Plaintiffs

were advised by Wood Crafters that $1,750 was still owed. Plaintiffs' Exhibit No. 2.

15. Again Plaintiffs made unsuccessful attempts to contact Defendant and on April 1, 2005, drove to Defendants' home and discussed completion of the work, and Defendant promised to obtain releases of liens for all of the work done so far. Subsequently, Defendant made excuses for his failure to obtain the releases and continued to evade Plaintiffs' phone calls. Testimony of Michael Hanson; Plaintiffs' Exhibit No. 2.

16. No further work was performed until April 8 when a different gunite company, Azteca Gunite, came out to work on the cave area of the pool. Defendant arrived late in the day and stayed briefly. Azteca Gunite returned on April 12 around 4:00 o'clock p.m. and finished the cave. Defendant was not present. Plaintiffs made additional phone calls to Defendant and received no response. Plaintiffs' Exhibit No. 2.

17. On April 15, Michael Hanson spoke with Defendant; on April 18, 20 and 21, 2005, a deck crew showed up and worked, without supervision by Defendant. Defendant came to Plaintiffs' home on April 22 and discussed framing of the outdoor kitchen. No work was done. On April 24, Plaintiffs were advised by a subcontractor that the check he received from Defendant had been returned for insufficient funds. Testimony of Michael Hanson; Plaintiffs' Exhibit No. 2.

18. Thereafter, no work was done except for framing on the kitchen by Wood Crafters on April 26 and 27, 2005. Materials were dropped off on May 2, 2005 and limited work was done on May 4, 2005. On May 5, Defendant contacted and met with Plaintiffs. He requested payment of the third check in the amount of $15,000. Plaintiffs agreed to make payment conditioned upon the Defendant's being present on the job site to supervise, and the Defendant's providing Plaintiffs with proof that the subcontractors on the job had been paid. Defendant promised to bring the releases the next day and to remain to supervise the crew installing the moss rock. Defendant did not return on May 6, 2005. Plaintiffs' numerous attempts to contact him were unsuccessful. Plaintiffs' Exhibit No. 2.

19. Defendant testified that he received the third check in the amount of $15,000 and the fourth check in the amount of $4,750 from the Plaintiffs but subsequently endorsed them back over to the Plaintiffs around the time that his bank accounts were frozen and closed. Michael Hanson testified that Plaintiffs received these checks. The evidence and testimony do not reflect the specific dates that these checks were turned over to Defendant and subsequently endorsed back to Plaintiffs.

20. On May 7, Plaintiffs received a certified letter from an attorney retained by Azteca Gunite, threatening to place a lien on their home for work done and not paid for. Plaintiffs testified that a small amount of work was done by the subcontractor

applying the flagstone on May 8, 9, and 11, 2005. The same subcontractor showed up again on May 12 and worked until May 15, 2005 when they completed the job. Defendant did not supervise any of the work. Testimony of Michael Hanson; Plaintiffs' Exhibit No. 2.

21. Defendant did not come to the job site for almost two weeks, from May 5 to May 17, 2005. During this time, Plaintiffs made multiple calls to, and left messages for, Defendant. None of Plaintiffs' calls were returned. Plaintiffs finally contacted Defendant and he came to their home on May 17, 2005 but only stayed about an hour. Defendant never returned to the job site. Plaintiffs' Exhibit No. 2.

22. Thereafter, Plaintiffs made numerous attempts, on a daily basis, to contact Defendant by phone and email. There was no response by Defendant. Michael Hanson finally spoke with Defendant on May 20, 2005, and Defendant was to get back with Plaintiff to let him know when the next crew was to come to the job site. There was no follow up phone call by Defendant until May 23, 2005, when Defendant said he was calling just to check on his customers since he had lost his phone over the weekend. Defendant never completed the job. Plaintiffs' Exhibit No. 2.

23. Defendant claims that, at the time he signed the contract, he did not intend to defraud the Plaintiffs and his intent was to complete the project. Defendant testified that the job undertaken for Plaintiffs was mostly finished when he began

9

having financial difficulty during the latter part of construction. Defendant was unable to recall the exact time period this occurred.

24. Defendant testified that his financial problems were partly due to a failure to collect amounts due from other projects that had been completed. He estimated that he was unable to collect about 20% of what was owed to him, resulting in his bank account having insufficient funds. Defendant also testified that, around this same time, a former customer called his Bank and alleged that Crystal Pools deposited a check made payable to the customer and Crystal Pools, without obtaining the customer's endorsement. Defendant's Bank froze all of his accounts.

25. Defendant testified that he did not collect any money from the Plaintiffs when he was having financial difficulty. Defendant contends that his business failed due to the cumulative effect of prior customers not paying for jobs that had been completed, the bank's freezing his accounts, and the fact that he did not make good business decisions. He testified that all of these circumstances contributed to his being unable to complete the job for Plaintiffs.

26. Defendant testified that his personal property, his car, and his home were registered and/or titled in his wife's name. Defendant denied that this was done to prevent these assets from being subject to any liability from his business activities. In connection with his failure to return phone calls, Debtor testified that unless he had answers to the Plaintiffs' questions, he did not

call back. Defendant testified that he was at Plaintiffs' home to supervise the subcontractors at least three to five times per week. He attributed the time lapses between periods when work was performed at Plaintiffs' home to the fact that the subcontractors were not showing up.

27.  Defendant did not submit any documentary evidence. In his Pretrial Statement, Defendant states that he lost most of his documents in connection with this construction job, as a result of losing his home and having to make subsequent moves. He testified that he did not have records from his checking account, and that he was unable to obtain copies from his bank since he is involved in litigation with the bank over the dishonored check.

28.  The court finds that Defendant was not a credible witness and that his testimony was self-serving, evasive, and inconsistent with the testimony of Michael and Marilee Hanson. Michael Hanson testified that Defendant only did a minimal amount of work on the project.  Before Plaintiffs had use of the pool, substantial work had to be performed.  Hanson testified that several contractors had to repair or completely replace and redo work that had been done by Defendant because of poor workmanship and improper installation.  He testified that it took over one year to complete the pool portion of the project such that the pool could be filled with water and used.

29.  In addition to the money that Plaintiffs paid Defendant, Plaintiffs incurred substantial expenses to have the job

completed. Plaintiffs paid Imagine Pools & Spas $29,564.94 for work to complete the project. Plaintiffs' Exhibit No. 6. Additionally, they paid "Aztecaz Tile & Coping" $7,200 and "Azteca Gunite" $2,250 to obtain the release of liens on their home for work done during the time Defendant worked on the project. Plaintiffs' Exhibit Nos. 5 and 17. Plaintiffs also incurred the following expenses: $136.85 and $92 for equipment rental (Plaintiffs' Exhibit Nos. 7 and 10); $56.70, $35.32, and $9.45 for materials purchased from Home Depot in connection with the outdoor kitchen and patio (Plaintiffs' Exhibit Nos. 10 - 12); $1,400 for clean up after departure of Crystal Pools (Plaintiffs' Exhibit No. 11); $920.12 for rocks and stones for the rock facing of the outdoor kitchen and patio (Plaintiffs' Exhibit No. 13); $8,862.49 for masonry construction on the outdoor kitchen and patio, performed by Tex Stone Construction (Plaintiffs' Exhibit No. 14). These expenses total $50,527.87.

30. Plaintiffs also submitted two estimates, one from Wood Crafters in the amount of $4,725 in connection with the original bid for the outdoor kitchen, and one from Moss Landscaping in the amount of $8,435.71 in connection with irrigation work. Plaintiffs' Exhibit Nos. 15 and 16. Michael Hanson testified that the Plaintiffs did the kitchen work themselves although the cost for the materials and labor involved for this portion of the project was included in the contract. He also testified that the irrigation work has not been done but that this also was part of

the contract. These written estimates total $13,160.71. Michael Hanson also testified that he received verbal estimates in connection with materials and labor for other work to be performed under the contract: $3,100 to complete the stone facing in front of Plaintiffs' house; and $700 to complete drainage work. These verbal estimates total $3,800.00.

31.  Defendant was paid a total of $80,250.00 (the $250 downpayment and the two $40,000 checks) by Plaintiffs. Defendant failed to complete the project and as a result, Plaintiffs expended an additional $50,527.87, and has estimated expenses from the written estimates in the amount of $13,160.71 and estimated expenses from the verbal estimates in the amount of $3,800.

32.  The court finds that, shortly after Defendant obtained payment of the second check for $40,000 and the purchase of his boat, sometime around the middle of February 2005, Defendant did not intend to complete the construction project. The court further finds that at the same time that Defendant was not paying the subcontractors, he was misrepresenting to the Plaintiffs that all subcontractors had been paid in full and that he would furnish Plaintiffs with releases of liens to that effect. Defendant did not offer evidence or testimony to support the fact that the monies he received from Plaintiffs were actually used by him for Plaintiffs' construction contract.

33.  The court finds that the Defendants' actions in failing to supervise the job, failing to pay the subcontractors,

misrepresenting to Plaintiffs that the subcontractors were paid in full in order to obtain additional funds from Plaintiffs, in failing to complete the job and in using the construction funds for his own benefit were "wilful", in that they were done deliberately and intentionally.  The court finds Defendant's actions "malicious" pursuant to its meaning in section 523(a)(6) as they were done in conscious disregard of his obligations under the contract, and without just cause or excuse.

34. Plaintiffs allege that Defendant became a "fiduciary" or "trustee" of all construction fund proceeds received from any source pursuant to the Texas construction funds statute.  Once the funds were received by Defendant and not paid to the proper parties, Plaintiffs contend that, under the provisions of the statute, the funds were misapplied resulting in fraud or defalcation occurring while Defendant acted in a fiduciary capacity.  4 Tex.Prop.Code Ann. §§ 162.001 to .033 (Vernon 1984).

35. Plaintiffs believe that Defendant's violation of the Texas construction funds statute results in the commission of a fraud or defalcation while acting in a fiduciary capacity under 11 U.S.C. § 523(a)(4).  As the court has found the debt nondischargeable under § 523(a)(6), it need not reach the issue of whether this debt falls into the exception to discharge set forth in § 523(a)(4).

36. Plaintiffs requested attorney's fees for prosecution of the instant adversary proceeding.  Attorney's fees

are recoverable under section 523 only if Plaintiffs have a statutory or contractual right to recover attorney's fees. Counsel for Plaintiffs is to submit within ten (10) days of entry hereof an affidavit to the court setting forth the statutory or contractual basis for recovery of attorney's fees and the amount of expenses and attorney's fees incurred in prosecuting the instant adversary proceeding, with a copy to be served on Defendant and Defendant's counsel. Defendant will have ten (10) days to request a hearing on the amount of the expenses and attorney's fees, if he so desires.

## Conclusions of Law

1.   Bankruptcy Rule 7015 makes Federal Rule of Civil Procedure 15, Amended and Supplemental Pleadings, applicable to adversary proceedings. Federal Rule of Civil Procedure 15(b) provides:

> (b) Amendments to Conform to the Evidence.
> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

2. Section 523 is governed by a preponderance of the evidence burden of proof which the creditor is required to show that his debt falls within one of these exceptions. *Grogan v. Garner*, 498 U.S. 279 (1991). The preponderance of the evidence standard applies to all § 523 actions.

3. Section 523(a)(6) of the Bankruptcy Code states that a discharge under title 11 "does not discharge a debtor from any debt - for willful and malicious injury by the debtor to another entity or to the property of another entity." "Willful" as used in 523(a)(6) means deliberate or intentional; "malicious" means in conscious disregard of one's duties, or without just cause or excuse, and does not require ill will or specific intent to do harm; "reckless disregard" standard is not proper grounds to hold conduct "willful and malicious." *In re Dean*, 79 B.R. 659 (Bankr. N.D. Tex. 1987). 4 *Collier on Bankruptcy,* ¶ 523.16 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.).

4. This court concludes that based upon the facts established at trial, Plaintiffs have met their burden of proof in establishing that this debt should be deemed nondischargeable pursuant to § 523(a)(6).

5. A creditor who prevails under 11 U.S.C. § 523 is entitled to recover its attorney's fees and have them held nondischargeable along with the debt if the prevailing creditor has a statutory or contractual right to recover attorney's fees. *In re*

16

*Luce*, 960 F.2d 1277, 1286 (5th Cir. 1992); *Jordan v. Southeast Nat'l Bank*, 927 F.2d 221, 227 (5th Cir. 1991).

      6.   The court was not provided with information as to the status of the state court proceeding (referenced in the Schedules and Statement of Financial Affairs of Defendant's main case bankruptcy) filed by the Hansons against Kelly. The court notes that there has been no request, in Defendant's main case bankruptcy proceeding, to lift the automatic stay to proceed with the suit in state court. However, regardless of the pendency of a state court proceeding, the court is not bound by a state court's characterization of the obligation and can, if it so chooses, make alternate findings based upon a presentation of evidence before it. See *In re Dennis*, 25 F.3d 274 (5th Cir. 1994) and cases cited therein. This court has independently determined the nature and amount of the debt for dischargeability purposes based upon the evidence presented before it.

      Based upon the above findings of fact and conclusions of law, the court renders a Judgment in favor of Plaintiffs in the amount of $67,488.58 against Defendant and declares this debt to be nondischargeable. The court will consider any affidavit submitted within ten (10) days of entry of this opinion detailing the statutory or contractual basis for awarding attorney's fees and the amount of expenses and attorney's fees that may be awarded to Plaintiffs in connection with this adversary proceeding. If a

request for hearing on the basis or amount of expenses and attorney's fees identified in Plaintiffs' counsel's affidavit is filed within (10) days of the filing of the affidavit, the court will hear testimony on the expenses and attorney's fees.  The court will enter a separate Judgment in conjunction with these findings of fact and conclusions of law.

      Signed at Houston, Texas on this 3rd day of March, 2008.

_____
LETITIA Z. CLARK
UNITED STATES BANKRUPTCY JUDGE